UNITED STATES of America, Appellee,

v.

Benjamin CLEMENTE, Defendant,

Joseph Demolfetto, Thomas Albunio, Pasquale D. Mirenda, Anthony Cassera, James Sharkey and Leonard Messana, Defendants–Appellants.

Nos. 182–184, 257, 185 and 186, Dockets 93–1024(L), 93–1164, 93–1187, 93–1209, 93–1222, 93–1223 and 93–1247.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1993.

Decided April 20, 1994.

478

Daniel M. Felber, New York City (Balsam & Felber, of counsel), for defendant-appellant Albunio.

Charles A. Ross, New York City (Benjamin Brafman, P.C., Katherine R. Frohock, of counsel), for defendant-appellant Messana.

Robert Koppelman, New York City, for defendant-appellant Mirenda.

David C. James, New York City, Asst. U.S. Atty. for the Eastern District of New York (Zachary W. Carter, U.S. Atty., Beryl A. Howell, Asst. U.S. Atty., of counsel), for appellee.

Samuel Gregory and Robert J. Collini, Brooklyn, NY (Lazzaro, Gregory & Hatzipetros, of counsel), for defendant-appellant Demolfetto.

Allen Lashley, Brooklyn, NY, for defendant-appellant Sharkey.

Before: MESKILL, PRATT and MAHONEY, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Appellants Joseph Demolfetto, Thomas Albunio, Pasquale D. Mirenda, Anthony Cassera, James Sharkey, and Leonard Messana appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York, I. Leo Glasser, Judge. After a five-week jury trial, all defendants were acquitted of RICO conspiracy, substantive RICO, and substantive Hobbs Act offenses; but the six defendants before us were convicted of conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. Their indictment and convictions resulted from a four-year investigation into widespread corruption within the New York City Department of Buildings ("DOB"). Twenty-two DOB inspectors ultimately pled guilty to extortion or racketeering charges. Eight DOB inspectors were tried before Judge Glasser; two of them were acquitted on all counts.

Defendants raise numerous issues on appeal. We first address their contention that the jury's answers to the special interrogatories were inconsistent with its guilty verdicts on the Hobbs Act conspiracy and that therefore their convictions should be reversed. We then examine whether the admission of evidence of uncharged acts combined with the court's instructions to the jury constructively amended the indictment. For the reasons set forth below, we affirm.

## FACTS AND BACKGROUND

All of the defendants worked in the construction division of the DOB, which is the division responsible in New York City for issuing a certificate of occupancy ("CO"). A

CO certifies that a building has been constructed in accordance with the approved plans and in compliance with applicable construction codes. It also describes how a building may be legally used or occupied. Every building in Manhattan must have a CO; obtaining one often can be a lengthy process.

Before beginning construction on a building, the builder must obtain a work permit from the technical and engineering division of the DOB. After construction is completed, the divisions of the DOB inspect the building to ensure that the work followed the approved building plan and meets applicable laws. If there are any violations, the DOB issues a list of objections to the builder. All violations must be corrected and the building reinspected before a CO can be issued. The DOB also issues violations for illegal conditions that may be found in buildings that already have COs.

Builders have a strong interest in obtaining COs as quickly as possible. Because a building cannot be used or occupied without a CO, obtaining a CO is typically a condition precedent to finalizing the sale, lease, or rental of a building. Furthermore, builders cannot usually refinance their high-interest construction loans with lower-interest mortgage loans until a CO has been issued. In sum, any delay in the issuance of a CO can have direct negative financial consequences for the builder. It is not unusual for a builder to lose thousands of dollars for each day the CO process is prolonged.

Unfortunately, several inspectors in the DOB took advantage of the financial pressures on the builders and regularly demanded payoffs for "expediting" the issuance of COs and otherwise insuring that paperwork was not lost or unreasonably delayed. Payoffs ranged in amount from $50 to $20,000. In some areas, payoffs became so routine that there were standard payoff "rates". Many builders took these costs for granted and made the payoffs without even being asked.

Corrupt inspectors assisted and facilitated one another's efforts to collect the graft. Field inspectors typically shared with their supervisors the payoffs they received. Inspectors also exchanged information about builders who would make payoffs.

A 124–count indictment based on this pervasive corruption charged the defendants with RICO conspiracy, substantive RICO, Hobbs Act conspiracy, and substantive Hobbs Act violations. The construction division of the DOB in Brooklyn, Manhattan, Queens, and Staten Island constituted the RICO "enterprise". The six defendants before us were employed as either inspectors or supervisory inspectors in the construction division. To effect the purposes of the enterprise, the defendants allegedly "routinely used their positions * * * to extort money in return for their approval, without delay, of the issuance of certificates of occupancy for buildings". Three of the defendants before us were also alleged to have shared extorted cash payments with others.

As the pattern of racketeering activity, for count 2 of the indictment, the substantive RICO offense, the indictment listed forty-three acts of extortion, twenty-six of which involved the six defendants before us. In general, each racketeering act charged that a defendant unlawfully received a specific amount of money in return for issuing a certificate of occupancy for a particular address. The racketeering acts were also incorporated by reference in count 1, the RICO conspiracy charge, and were realleged separately as substantive Hobbs Act offenses.

Approximately two months before trial, the government notified the court and the defense that it intended to offer testimony on additional acts of extortion that were not charged in the indictment. Judge Glasser admitted evidence of these uncharged additional payoffs. He held that for the RICO counts, see 18 U.S.C. § 1962, the uncharged-act evidence was admissible for "establishing an enterprise and an association in fact, and the establishment of the relationship of trust between the parties, for purposes of the enterprise". With respect to the Hobbs Act substantive and conspiracy charges, see 18 U.S.C. § 1951, he held the testimony admissible under Fed.R.Evid. 404(b), as evidence of knowledge, intent, and absence of mistake or accident.

The verdict sheet included special interrogatories under the two RICO counts listing forty of the charged racketeering acts, twenty-five of which pertained to the defendants before us. Next to each act, the jury was to check either "Proved" or "Not Proved". In response to these interrogatories, the jury indicated that none of the forty alleged racketeering acts had been proved by the government, and it acquitted all of the defendants on the substantive RICO and RICO conspiracy counts.

The Hobbs Act conspiracy was the last count charged in the indictment, count 124, and it was the only count that resulted in any convictions. It read, in relevant part:

> the defendants * * * unlawfully combined, conspired, confederated and agreed unlawfully to obstruct * * * commerce * * * by extortion, that is, by conspiring unlawfully to obtain * * * money not due them or their office, from another, with his consent, induced under color of official right and by wrongful use of actual or threatened fear of economic harm, *as alleged in the Racketeering Acts listed above,* which are repeated and realleged as if fully set forth herein.

(emphasis added). In the jury instructions, Judge Glasser used nearly identical language, explaining that count 124 charged the defendants with conspiring to commit extortion by obtaining money not due to them "*as alleged* in the racketeering acts which you'll find set out in count 2 of the indictment." However, he noted that it was "possible * * * to find the defendant guilty of conspiracy and not guilty of the substantive offense of extortion." In addition, he warned that the defendants were "on trial only for those crimes with which they [we]re charged in this indictment" and that the evidence of uncharged wrongful conduct had been admitted only for the purpose of showing "the defendant acted knowingly and intentionally and not because of mistake or accident".

The jury found six of the eight defendants guilty of a Hobbs Act conspiracy. All six of those defendants are represented on this appeal.

## DISCUSSION

Defendants argue that the jury's responses on the verdict sheet were internally inconsistent and that therefore their convictions must have been based on insufficient evidence and should be reversed. They also contend that the indictment was constructively amended by the admission of evidence of uncharged acts combined with the judge's instructions to the jury. The government maintains that the jury's responses were not inconsistent, that there was more than sufficient evidence to establish a Hobbs Act conspiracy, and that the indictment was not constructively amended at trial.

### A. Consistency of the Jury's Responses

■ Count 124 charges the defendants with conspiring to commit extortion "as alleged in the Racketeering Acts listed above, which are repeated and realleged as if fully set forth herein." Defendants argue that the jury's "Not Proved" responses for the racketeering acts are inconsistent with its general "guilty" verdicts on count 124. Because the government apparently failed to prove any of the racketeering acts, defendants claim that there was insufficient evidence to support their Hobbs Act conspiracy convictions.

■ Defendants' analysis with respect to the Hobbs Act conspiracy offense is misguided. While a Hobbs Act substantive offense requires proof of (1) interference with commerce and (2) extortion, *see Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), a Hobbs Act conspiracy charge does not carry those same requirements. In order to establish a Hobbs Act conspiracy, the government does not have to prove any overt act. *United States v. Maldonado–Rivera,* 922 F.2d 934, 983 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); *see also United States v. Facciolo,* 753 F.Supp. 449 (S.D.N.Y.1990), *aff'd sub nom., United States v. Skowronski,* 968 F.2d 242 (2d Cir.1992); *United States v. Persico,* 832 F.2d 705, 713 (2d Cir.1987) (overt acts in furtherance of conspiracy need not be pleaded or proved), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988). "Factual impossibility" is no defense to the inchoate offense of

conspiracy under the Hobbs Act. The government needs to prove only that an agreement to commit extortion existed, not that extortion was actually committed. *See United States v. Skowronski,* 968 F.2d 242, 250 (2d Cir.1992) ("it is as much a violation of § 1951 to conspire to commit a robbery affecting interstate commerce as it is to commit such a robbery"); *United States v. DiCarlantonio,* 870 F.2d 1058 (6th Cir.) ("conspiracy charge requires the government to prove only that the defendants' scheme would have affected commerce"), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

Therefore, it is of no moment that the jury found that none of the alleged racketeering acts had been proved, because those acts were not a necessary element of the offense. While the jury may not have believed that any of the payoffs alleged as racketeering acts in count 2 were actually made, it evidently believed that the defendants had conspired to obtain illicit payments of the same type. As a consequence, we hold that the jury's responses on the verdict sheet were not inconsistent with one another.

### B. *Constructive Amendment of the Indictment*

■ Although the jury's responses on the verdict sheet were not internally inconsistent, we still must ensure that the jury based its convictions on permissible grounds. Defendants argue that the admission of evidence of acts of extortion not specifically charged in the indictment, when combined with instructions from the judge that were inadequate, constituted a constructive amendment of the indictment because it allowed the jury to convict them on a basis different from that advanced by the grand jury.

We note here that the defendants and the government both devote substantial discussions to whether or not the Hobbs Act conspiracy was limited to the charged racketeering acts. Defendants argue that the phrase "as alleged in the Racketeering Acts listed above" in count 124 limited the conspiracy to the racketeering acts listed under count 2. The government responds that the listed acts

merely helped to describe "the manner in which the conspiracy operated" and maintains that simply because the listed acts were included within the alleged conspiracy, it does not follow that the conspiracy was necessarily confined to those acts.

Although now the government contends that count 124 was not limited to the charged acts, it is evident from the record that throughout the trial, all parties, as well as the trial judge, proceeded on the assumption that the Hobbs Act conspiracy was in fact limited to the acts charged in the indictment. In his charge to the jury, Judge Glasser repeatedly stated that the defendants were on trial only for those crimes with which they were charged in the indictment. One defense attorney was concerned that the jury may have misunderstood those admonitions as being applicable only to the RICO counts, so he requested an additional charge that count 124 was a conspiracy "to commit only the predicate acts". Because he felt that that notion had already been sufficiently conveyed to the jury, Judge Glasser refused to make the requested charge and said: "In 124, well, I told them any number of times that they are on trial only for the crimes charged in the indictment and for nothing else. That is very clearly spelled out in 124." The government attorneys neither objected to the portion of the charge relating to count 124 nor disputed Judge Glasser's characterization of that count.

Even assuming that count 124 limited the Hobbs Act conspiracy to the particular acts charged in count 2 of the indictment, as we do, this does not answer the question of whether or not the admission of uncharged-act evidence constructively amended the indictment. Because the jury expressly found that none of the racketeering acts listed in count 2 of the indictment had been proved, defendants argue that they must have been convicted on the basis of the uncharged-act evidence. However, as noted in the previous section, it was not necessary for the jury to find that *any* acts of extortion occurred, whether charged or uncharged, to find defendants guilty of a Hobbs Act conspiracy. Therefore, our conclusion that count 124 limited the conspiracy to the racketeering acts

charged in count 2 is not dispositive of defendants' constructive-amendment claim.

 Under the fifth amendment, a defendant has the right to be tried only on charges contained in an indictment returned by a grand jury. An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively. Constructive amendments of the indictment are *per se* violations of the fifth amendment that require reversal even without a showing of prejudice to the defendant. *United States v. Helmsley*, 941 F.2d 71, 89 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992); *United States v. Mollica*, 849 F.2d 723, 730 (2d Cir.1988).

 A constructive amendment of an indictment occurs when the presentation of evidence and jury instructions modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury. *Mollica*, 849 F.2d at 728–29; *United States v. Patino*, 962 F.2d 263, 266 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992); *United States v. Weiss*, 752 F.2d 777 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). In determining whether an "essential element" of the offense has been modified, however, we have "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial." *Patino*, 962 F.2d at 266, *quoting United States v. Heimann*, 705 F.2d 662, 666 (2d Cir.1983) (further citations omitted).

For their constructive-amendment claim, defendants rely primarily on *Stirone* and *Mollica*. In *Stirone*, the defendant was charged with violating the Hobbs Act by using his union position to interfere unlawfully with the movement of sand in interstate commerce. 361 U.S. at 214, 80 S.Ct. at 271. At trial, the government introduced evidence suggesting that Stirone's actions also interfered with interstate shipments of steel. The judge instructed the jury that Stirone's guilt could be based upon finding that the interstate movement of either sand or steel had

been unlawfully obstructed. *Id.* Because the instruction erroneously permitted the jury to convict based on interference with steel shipments, a type of commerce that had not been charged by the grand jury, the Supreme Court concluded that the indictment had been constructively amended and therefore reversed the guilty verdict.

*Mollica* involved income tax offenses, including a conspiracy to defraud the United States by impeding the governmental functions of the Internal Revenue Service, in violation of 18 U.S.C. § 371 (1982). 849 F.2d at 725. Mollica claimed that the indictment had been constructively amended by a jury instruction that the conspiracy could be "in any manner or for any purpose", without limiting the offense to income taxes. *Id.* at 728. Because on the evidence presented the jury might have convicted the defendant of a conspiracy to defraud that involved money laundering rather than income taxes, we held that the indictment had been impermissibly amended. *Id.* at 729–30.

In this case, four witnesses testified about payoffs that were not among those listed in the indictment. Defendants contend that the admission of this uncharged-act evidence created a "substantial likelihood that [they] may have been convicted of an offense other than that charged in the indictment." *Mollica*, 849 F.2d at 728–29.

 We do not agree. The facts here are easily distinguishable from those in *Stirone* and *Mollica*. Because nothing that happened in the district court ran the risk of amending the indictment, a reversal is not warranted. We note that not only did the defendants have notice of the " 'core of criminality' to be proven at trial," *see Patino*, 962 F.2d at 266 (quoting *Heimann* ), they also had two months' notice that the government would be presenting evidence of the uncharged acts. In *United States v. Skowronski*, 968 F.2d 242 (2d Cir.1992), another Hobbs Act conspiracy case, we held that a trial court may admit evidence that does not directly establish an element of the offense charged. *Id.* at 246. The district court exercises broad discretion in determining whether or not similar-act evidence is admissible;

we review such decisions for abuse of discretion. *Caputo*, 808 F.2d at 968.

Judge Glasser permitted testimony about certain uncharged acts to be admitted for the purpose of demonstrating, with respect to the RICO counts, "an enterprise * * * and * * * the relationship of trust between the parties", and, with respect to the Hobbs Act counts, as proof of knowledge, intent, and absence of mistake or accident. *See* Fed. R.Evid. 404(b) (other crimes evidence admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Both of these reasons were valid, *see United States v. Coiro*, 922 F.2d 1008, 1015–16 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (evidence of drug-trafficking arrests admissible to show existence of RICO enterprise); *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir.1987) (similar acts admitted as evidence of intent on conspiracy charge), and Judge Glasser gave appropriate limiting instructions regarding the use of uncharged-act testimony. The admission of evidence of the uncharged acts was proper.

However, defendants argue that Judge Glasser's jury charge broadened the basis for conviction by not properly informing the jury that the conspiracy was limited to the racketeering acts enumerated in the indictment. Unlike *Stirone* and *Mollica*, where the jury instructions clearly allowed the juries to convict on offenses other than those charged, we are satisfied that the district judge did not broaden the possible basis for conviction here. Reviewing the charge in its entirety and "not on the basis of excerpts taken out of context", *see Mollica*, 849 F.2d at 729, it is clear that the judge took pains to ensure that the offenses of conviction were properly limited. With respect to the RICO conspiracy, Judge Glasser specifically instructed the jury that the defendants were not on trial for any crimes except for those that were charged in the indictment; when he reached the Hobbs Act conspiracy count, he reiterated that admonition. Furthermore, at several points during the charge, he warned that the evidence of uncharged acts was admitted solely to show that the defendants had acted with knowledge and intent, not by mistake or

accident. Reading the instructions as a whole, we find them more than sufficient to guard against constructive amendment of the indictment.

We have considered defendants' other claims and find them to be without merit.

The judgment of the district court is affirmed.