**UNITED STATES of America,**
**Appellee,**

v.

Gary FRIEDMAN, Carlos Rodriguez, a/k/a Carlos Diaz and Kenneth Friedman, a/k/a Keith Delellis, a/k/a Anthony Stewart, a/k/a Tony Russo, a/k/a Anthony Zito, Defendants–Appellants,

Ruben Hernandez, a/k/a Junior, Charles Sanchez and Juan Galindo, a/k/a Puppet, a/k/a Anthony Ochoa, a/k/a Jason Boodran, Defendants.

Docket Nos. 98–1398(L), 98–1425, 98–1435.

United States Court of Appeals, Second Circuit.

Aug. 6, 2002.

Margaret E. Alverson, New York, NY, for Defendant–Appellant Gary Friedman.

Gary Schoer, Syosset, NY, for Defendant–Appellant Kenneth Friedman.

Michael S. Washor, New York, NY, for Defendant–Appellant Carlos Rodriguez.

Emily Berger, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, of counsel; Alan Vinegrad, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

Present GUIDO CALABRESI and JOSÉ A. CABRANES, Circuit Judges, and LORETTA A. PRESKA District Judge.*

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and is AFFIRMED, except as stated in the opinion we issue simultaneously with this order.

Gary Friedman, Kenneth Friedman, and Carlos Rodriguez appeal from judgments of conviction entered after a jury trial in the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*). The Friedmans argue that evidence obtained as a result of a traffic

---

* The Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, sitting by designation.

stop should have been suppressed; that tape recordings of conversations between them over a jailhouse telephone should have been suppressed; that the government failed to show an interstate nexus on the Hobbs Act counts; that the Government failed to establish venue for Gary's conviction for possession of stolen art; and that their sentences violated the teachings of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Rodriguez challenges the sufficiency of the evidence with respect to his convictions for involvement in the California crimes. Rodriguez also argues that certain hearsay testimony should not have been admitted and that the prosecutor's improper statements during closing arguments deprived him of a fair trial with respect to those charges.

The Friedmans' arguments regarding the admissibility of the tapes of calls made by Kenneth Friedman from the Torrance County Jail and their *Apprendi* claims, as well as all of Rodriguez's claims, are addressed in the opinion we issue simultaneously with this order. Here, we briefly address the Friedmans' remaining claims.

A.  The Traffic Stop Evidence

■ In denying the Friedmans' motion to suppress the evidence seized after the October 10, 1994, traffic stop, the District Court found that (1) the officers had probable cause to stop the car because they observed traffic violations and that they did not stop the car because the driver— Hernandez—is Hispanic; (2) the officers *did not* have probable cause to search the car; but (3) the search of the car was permissible under the "search incident to arrest" exception. *United States v. Friedman,* Nos. 95–CR–192, 96–CR–182, 1996

WL 612456, at *12–*16 (E.D.N.Y. June 25, 1996).[1]  On appeal, the Friedmans contend that the District Court's findings with respect to the reason for the stop were clearly erroneous and that it erred in finding that the search was permissible as incident to an arrest because they were arrested only after the search took place.

With respect to the reason for the stop, the Friedmans point to inconsistencies between the account of the incident as testified to by Hernandez and the accounts as testified to by the officers, as well as slight inconsistencies between the accounts of the officers themselves.  They argue that the officers' testimony is a textbook example of *post hoc* tailoring of an account of a traffic stop to avoid constitutional objections and that, accordingly, it should be rejected as not credible.

It is, of course, the province of the fact-finder—in this instance, the District Court—to determine whether testimony was "tailored" and to determine which account of a stop is more credible.  *See, e.g., United States v. Cota,* 953 F.2d 753, 759 (2d Cir.1992).  In this case, although the District Court explicitly found Hernandez to be "credible and forthright," it found that "it is more likely that Hernandez is mistaken in his account of the traffic stops than that the officers are lying." *United States v. Friedman,* No. 95–Cr–192, slip op., at 3, 5 (E.D.N.Y July 3, 1996).  The District Court's finding was not clearly erroneous.  Accordingly, the Friedmans' claim that the car was stopped without probable cause because of ethnic bias, in derogation of the Equal Protection clause, fails.

With respect to the post-stop search, the Friedmans argue that because the car's

---

**1.** We note that this opinion is erroneously dated "August 13, 1996" in Westlaw's database.*

* {Editor's Note: Date of decision has been corrected on Westlaw.]

occupants were not arrested until after the search, and because they were charged with unlawful possession of firearms (which firearms were seized in the course of the search), rather than with traffic violations which could have justified a pre-search arrest, the search was not "incident" to their arrest. We reject this argument for substantially the same reasons stated by the District Court in its June 25, 1996, opinion and order. *See Friedman*, 1996 WL 612456, at \*13–\*16.

B. Proof of the Interstate Commerce Element of the Hobbs Act Charges

■ The Friedmans argue that their convictions for conspiracy to extort Mark Levinas and Robert Marshall and a related firearms charge (Counts 6 and 7), as well as their convictions for conspiracy to extort Peter Kovach, attempted extortion of Kovach, and a related firearms charge (Counts 14, 15, and 18) must be vacated for insufficient evidence of the interstate commerce element. All that is required to satisfy the interstate commerce element of the Hobbs Act is a showing of a *de minimis* effect on commerce—or, put another way, a "very slight," "potential," or "subtle" effect. *See United States v. Arena*, 180 F.3d 380, 389–90 (2d Cir.1999). The Friedmans contend that there was no showing here that the intended victims of the extortion conspiracies were actually engaged in interstate commerce.

■ With respect to the Levinas and Marshall extortion conspiracy, the Government argues that the jury could infer that Levinas was involved in drug dealing at the time of the extortion from (1) Levinas's testimony that he trafficked in drugs (including, at times, with Marshall) before entering into business with Friedman and that, after Marshall was cooperating with state authorities, Marshall attempted to recruit Levinas for another drug transac-

tion; and (2) Marshall's testimony that, during the relevant time period, Marshall supplied Levinas with quantities of drugs sufficient for drug sales, as well as personal use. At this stage, where all inferences must be drawn in the Government's favor, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this evidence is sufficient to establish a nexus with interstate commerce. *See, e.g., United States v. Feliciano*, 223 F.3d 102, 118 (2d Cir.2000) (ongoing drug trafficking satisfies interstate commerce element of the Hobbs Act); *United States v. Goodwin*, 141 F.3d 394, 399 (2d Cir.1997) (same).

■ With respect to the Kovach conspiracy, the Friedmans' argument is foreclosed by *United States v. Clemente*, 22 F.3d 477 (2d Cir.1994). In *Clemente*, the jury had found all of the separate acts of extortion charged as overt acts in a RICO count "[n]ot [p]roved," but had found the defendants guilty on a Hobbs Act count of conspiracy to commit extortion. *Id.* at 480. The defendants argued that the jury's finding that the charged overt acts had not been proved required a verdict of acquittal on the Hobbs Act conspiracy count. *Id.* We rejected that argument:

Defendants' analysis with respect to the Hobbs Act conspiracy offense is misguided. While a Hobbs Act substantive offense requires proof of (1) interference with commerce and (2) extortion, a Hobbs Act conspiracy charge does not carry those same requirements. In order to establish a Hobbs Act conspiracy, the government does not have to prove any overt act. *"Factual impossibility" is no defense to the inchoate offense of conspiracy under the Hobbs Act.* The government needs to prove only that an agreement to commit extortion existed, not that extortion was actually committed.

*Id.* at 480–81 (emphasis added) (citations omitted).

Applying this reasoning—which applies equally to a charge of attempted extortion, *cf.* N.Y. Penal Law § 110.10 (McKinney 2000) ("If the conduct in which a person engages otherwise constitutes an attempt to commit a crime . . ., it is no defense to a prosecution for such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be.")—there is ample evidence to support the convictions related to the Kovach conspiracy. Testimony of multiple witnesses at trial established that, when Howard Bloomgarden and Gary Friedman hatched the plan to extort Kovach, they believed that he was still engaged in the drug business and was, therefore, rich. Although, at trial, the Government presented evidence that Kovach had actually quit the drug business and had invested all of his drug money into his cellular telephone business, it is clear that the conspirators believed that they were extorting someone currently engaged in the interstate business of drug trafficking.

### C. Proof of Venue on the Possession of Stolen Art Count

■ Gary Friedman challenges his conviction for possession of stolen art (Count 5) on the ground that there was insufficient evidence that the art was in his possession at any time while it was in the Eastern District of New York. The Government bears the burden of proving venue by a preponderance of the evidence. *United States v. Bala*, 236 F.3d 87, 95 (2d Cir.2000).

The stolen art was originally kept by Friedman and Bloomgarden in their Manhattan (*i.e.*, in the Southern District of New York) night club, Glamourama. Levinas testified that Friedman and Bloomgarden arranged a loan of $15,000 from Marshall to Levinas, with the stolen art serving as collateral. Thereafter, a worker at the club placed the art in a pickup truck and drove it to Marshall's house in Brooklyn (*i.e.*, in the Eastern District of New York).

The jury was properly charged regarding venue and regarding constructive possession:

> If the government proves by a preponderance of the evidence that a defendant constructively possessed goods at the time that he bartered, sold, or disposed of them, and that the goods were physically in the Eastern District at any time during the ba[r]tering, sale, or disposition, the venue element is satisfied.

> If, however, you find that the goods entered the Eastern District at a time when the defendant had already completed his participation in the crime, then the government has not proven that venue is proper in this district.

Trial Tr. at 3068.

Levinas's testimony was sufficient for a jury to find, by a preponderance of the evidence, that Gary Friedman was in constructive possession of the art when a worker at his club took it into Brooklyn. Accordingly, Gary's challenge to his conviction on Count 5 fails.

\* \* \*

We have considered all of the Friedmans' arguments and find them to be without merit. Accordingly, we affirm the judgment of the District Court, except as stated in the opinion we issue simultaneously with this order.