NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3384

_____

UNITED STATES OF AMERICA

v.

AMOS SINGLETON, a/k/a AZIZ MAHADI,
a/k/a AZIZ HANKERTON, a/k/a AZIZ HANKERSON

Amos Singleton,
                                                    Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-11-cr-00076-001)
District Judge: Honorable Norma L. Shapiro

_____

Submitted Under Third Circuit LAR 34.1(a)
April 8, 2014

Before:  AMBRO, JORDAN, and ROTH, Circuit Judges

(Opinion filed: May 1, 2014)

_____

OPINION

_____

AMBRO, Circuit Judge

        Amos Singleton was convicted on four counts relating to the November 2010

robbery of the Walnut Lane Apartment complex ("Walnut Lane") in Philadelphia:

conspiracy to commit robbery that interferes with interstate commerce, robbery that interferes with interstate commerce, use of a firearm during a crime of violence, and convicted felon in possession of a firearm. As found by the jury, Singleton conspired with Corey Pasley, a security guard at Walnut Lane, to gain access to Walnut Lane's business office. During the course of the robbery, he pointed a gun at Barbara Jablokov, who managed the complex, and shot her in the face. The District Court denied Singleton's various post-trial motions, and he now appeals.[1] We affirm.

**I. Rule 29 Motion for Acquittal**

Singleton argues that the District Court erred in denying his motion for acquittal under Federal Rule of Criminal Procedure 29. He claims the evidence is insufficient to support his conviction on the first count of the indictment—conspiracy to commit a robbery that interferes with interstate commerce in violation of 18 U.S.C. § 1951(a). "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Under this standard, "we must view the evidence in the light most favorable to the government and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal citations and quotation marks omitted).

"The essential elements of conspiracy are '(1) a shared "unity of purpose," (2) an intent to achieve a common goal, and (3) an agreement to work together toward the

---

[1] The District Court had jurisdiction under 28 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

2

goal.'" *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (quoting *United States v. Mastrangelo*, 172 F.3d 288, 291 (3d Cir. 1999)).[2] Here, Jablokov testified that Pasley arrived at work unusually early, around 4:00 p.m., and then stepped outside to take a call on his cell phone. She further testified that, on returning inside, he unlocked the door (without any knock or other indication someone was outside the door) and stepped aside. Immediately thereafter, a man with a gun entered. The second man proceeded to rob Walnut Lane, during the course of which he shot Jablokov. The robber appeared to know the location of Walnut Lane's security cameras, safe, and security alarm, information Pasley was one of only a few people to know. At no time did Pasley, who ostensibly ought to have been protecting Walnut Lane, attempt to stop the robber. Instead, Pasley

---

[2] Singleton was convicted of conspiracy under the Hobbs Act, 18 U.S.C. § 1951(a). We have never definitively ruled on whether an overt act is required to establish such a conspiracy, and our prior opinions give conflicting guidance. *Compare United States v. Manzo*, 636 F.3d 56, 66 (3d Cir. 2011) ("The government argues that the conspiracy count is valid because both elements of a conspiracy are met: (1) criminal intent and (2) an overt act."), *with United States v. Inigo*, 925 F.2d 641, 652 (3d Cir. 1991) ("For conspiracy convictions, this Court requires (1) some evidence of an agreement among the conspirators and (2) knowledge on behalf of each of the conspirators that the agreement 'had the specific unlawful purpose charged in the indictment.'" (quoting *United States v. Terselich*, 885 F.2d 1094, 1097 (3d Cir. 1989)). Among our sister Circuits, there is a split of authority on this question. The Fifth, Sixth, and Seventh Circuit Courts appear to require overt acts. *See United States v. Stephens*, 964 F.2d 424, 427 (5th Cir. 1992); *United States v. Stodola*, 953 F.2d 266, 272 (7th Cir. 1992); *United States v. Benson*, 852 F.2d 1456, 1465 (6th Cir. 1988); *see also United States v. Brantley*, 777 F.2d 159, 163 (4th Cir. 1985) (stating in passing that "proof of some overt act in furtherance of the conspiracy may be required"). However, the First, Second, and Eleventh Circuit Courts have specifically stated that no overt act is required. *See United States v. Franco-Santiago*, 681 F.3d 1, 9 n.14 (1st Cir. 2012); *United States v. Pistone*, 177 F.3d 957, 959-60 (11th Cir. 1999); *United States v. Clemente*, 22 F.3d 477, 480 (2d Cir. 1994). Because, in any event, there is more than sufficient evidence to show several overt acts in this case, we leave this question to be resolved in a future opinion.

prevented Jablokov from fleeing.  Both in court and in a prior photo array, Jablokov

identified Singleton as the robber.

After a jury verdict, "[i]t is not for us to weigh the evidence or to determine the

credibility of the witnesses." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)

(quoting *United States v. Schoolcraft*, 879 F.2d 64, 69 (3d Cir. 1989)).  Thus, even if, as

Singleton argues, the security video suggested the door may have been unlocked, the jury

could reasonably have chosen to believe Jablokov's testimony.  In any event, the

unlocking of the door is not essential to the verdict.

Contrary to Singleton's claims, there is also ample evidence to allow a rational

factfinder to conclude that Singleton called Pasley immediately before the robbery.  Cell

phone records admitted at trial show that a cell phone using the number (267) 622-0709

("the 0709 number") called a cell phone using the number (267) 237-1912 ("the 1912

number") at 4:01 p.m. on the day of the robbery, among other calls exchanged between

those numbers on that day.  The 1912 number was registered to the mother of Greta

Freeman, Pasley's then-girlfriend, and Freeman testified that, at that time, Pasley was

using that phone.  The phone with the 0709 number was registered to an Aziz Mahadi,

which Singleton testified was the Islamic name he had adopted and used for thirty-five

years.  FBI Special Agent William Shute, a properly qualified expert in historical cell site

analysis, concluded, based on cell phone tower records, that the phone with the 0709

number was near Walnut Lane at the time of the disputed call.  Given this and the other

evidence presented, a reasonable jury could have found the elements of a conspiracy and

thus had sufficient evidence to convict Singleton.

4

Alternatively, Singleton argues that there was insufficient evidence of an effect on interstate commerce. The first two counts were, respectively, conspiracy and robbery, both in violation of the Hobbs Act, 18 U.S.C. § 1951(a). The third count was using and carrying a firearm during a crime of violence, specifically the robbery and conspiracy, in violation of 18 U.S.C. § 924(c)(1). In relevant part, the Hobbs Act criminalizes activity that "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . ." 18 U.S.C. § 1951(a). Our case law requires only a *de minimis* effect on interstate commerce in Hobbs Act cases. *See United States v. Urban*, 404 F.3d 754, 766 (3d Cir. 2005). At trial, the Government introduced evidence that Walnut Lane had attempted to draw tenants from New York and New Jersey, had at least one resident who came from New York, and often made interstate supply purchases. Testimony was introduced that the robbery deprived Walnut Lane of money from rent payments, prevented Jablokov from managing the business for months due to her injuries, and made it more difficult to get future tenants. This evidence is sufficient to allow a reasonable jury to conclude that these crimes had the effect on interstate commerce necessary under the Hobbs Act. *See United States v. Haywood*, 363 F.3d 200, 209-211 (3d Cir. 2004) (concluding that, because a Virgin Islands bar sold beer imported from the mainland, a $70 robbery of that bar had sufficient effect on commerce to allow for a Hobbs Act prosecution).

Because, under our deferential standard of review, the evidence was sufficient to support the challenged convictions, the District Court did not err in denying Singleton's Rule 29 motion.

5

## II. Rule 33 Motion for a New Trial

In the alternative, Singleton filed a motion for a new trial under Federal Rule of Criminal Procedure 33. He argues that the District Court erred in denying this motion because it erroneously failed to suppress various pieces of evidence at trial and because statements by the prosecution allegedly prejudiced him.

### A. Failure to Suppress

"We 'review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts.'" *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (alteration in original) (quoting *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008)). We will address each of the challenged pieces of evidence in turn.

First, Singleton challenges the denial of his motion to suppress admission of a gun that belonged to Jablokov, was stolen during the robbery, and was recovered from a closet outside of Singleton's apartment. Insofar as he questions the District Court's factual findings as to how the gun was obtained, those findings were not clearly erroneous. As the District Court noted, the police first saw the gun when, while executing a valid warrant for Singleton's arrest on an unrelated bank robbery charge, they opened a padlocked hall closet outside his apartment to determine whether Singleton was hiding inside. Although only the building's landlord had a key to the closet, a gap beneath the door nonetheless allowed an object the size of the gun to be slid underneath. The police subsequently obtained a warrant and seized, among other things, the gun, later identified as belonging to the victim and stolen during the robbery. Whatever confusion

6

may have existed as to when the gun was seized was resolved through pre-trial testimony, and Singleton's assertions that the gun was planted are baseless.

Nor did the District Court err in its legal conclusions based on those factual findings. "The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (internal quotation marks and citation omitted). Because we have previously concluded that there is no reasonable expectation of privacy in the common area of an apartment building such as a hallway or staircase, it is unnecessary to repeat that analysis here: Singleton had no reasonable expectation of privacy in the closet. *See United States v. Acosta*, 965 F.2d 1248, 1252-53 (3d Cir. 1992). In short, despite Singleton's assertions, the District Court did not err in denying the motion to suppress the gun.

Second, Singleton argues that his cell phone records and any fruits thereof should have been suppressed on the ground that the records were illegally obtained. Despite his assertions to the contrary, the investigating officers did in fact obtain a warrant for the records. On appeal, Singleton provides no argument that this warrant was invalid. He claims instead that procuring these records violated 18 U.S.C. § 2703, which governs the circumstances under which communications and remote computing companies can be required to disclose the contents of customer communications. As the Government correctly notes, suppression is not a remedy for such a violation even if one were found. *See* 18 U.S.C. § 2708 ("The remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."). In the

7

alternative, he suggests that the records were obtained in violation of Pennsylvania law. Even assuming (without deciding) Pennsylvania law was violated, "evidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." *United States v. Rickus*, 737 F.2d 360, 363-64 (3d Cir. 1984) (citing *United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir. 1975)).[3] Without any basis for questioning the validity of the warrant, there is no reason to conclude the District Court erred in not suppressing the cell phone records or evidence obtained as a result of the cell phone records.

Third, Singleton claims that the District Court should have suppressed Jablokov's identification based on the second photo array and her in-court identification of him. "An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107-08 (1977)). However, "[a] 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting *Manson*, 432 U.S. at 106, 114). For the reasons stated by the District Court, the photo array identification was not unconstitutionally suggestive and, under the totality of the

---

[3] Because the records were obtained pursuant to a warrant not challenged here, it is unnecessary to reach the question of whether Singleton had a legitimate expectation of privacy in cell phone records held in his Islamic name.

8

circumstances, both identifications were reliable. Refusing to suppress these identifications was therefore not in error.

Fourth, Singleton asserts that the police unconstitutionally accessed his public welfare records from the Department of Public Welfare (DPW) to obtain his address without a court order. Because of this purported illegality, he argues that all evidence recovered in the subsequent search of his home must be suppressed. As the District Court correctly concluded, there is no recognized privilege for DPW records in our Court. Hence, the District Court did not err in not suppressing evidence obtained as a result of DPW's disclosure.

## B. Prosecutorial Misconduct

Singleton argues alternatively that he is entitled to a new trial because of alleged prosecutorial misconduct in comments about the absence of DNA evidence. Because, as the District Court notes, Singleton did not object to the purportedly improper comments at the time they were made, we review only for plain error. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). "In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal 'egregious error or a manifest miscarriage of justice.'" *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001) (quoting *United States v. Price*, 76 F.3d 526, 530 (3d Cir. 1996)). We see no such error here.

Singleton claims that the prosecutor improperly implied that the defendant had the burden of producing evidence. *See United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996) ("[T]he prosecution . . . may not improperly suggest that the defendant has the

burden to produce evidence.").[4] He further contends that the prosecutor implied knowledge of evidence not in the record, and thus the comment also constituted improper vouching. *See United States v. Young*, 470 U.S. 1, 18-19 (1985).

The prosecutor's statement in question was as follows:

Forensic evidence, [defense counsel] said, "Where's the DNA expert? DNA is all the rage now, why don't we have DNA experts parading around in the Courtroom?" Well, let me make it very clear, the Defense has no obligation to put on any evidence to demonstrate anything. They don't have to throw a scintilla of evidence into this courtroom, nothing, nada. By the same token, they have subpoenas, they can bring in witnesses. I guarantee you, if such a witness could come in and just blow this case out of the water, you would have heard from him.

App. at 920a.

As the quoted language implies, defense counsel had previously referred to the fact that the prosecution had not produced any DNA evidence. Specifically, trial counsel for Singleton stated that the person who committed the robbery would have left DNA on the safe keys and the gun, and went on to say:

We haven't heard any DNA evidence. All we've heard is I took DNA here and I took DNA there . . . Where is it? It's not here because it doesn't show that there was a positive identification with Amos Singleton. Now, that's the only, only rational explanation as to why the Government wouldn't bring in evidence that the—DNA evidence, since the OJ trial is now it. . . . If they had it, you would have seen it.

App. at 906a-07a.

As the Supreme Court wrote in *Young*, "if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments

---

[4] Although Singleton cites various cases addressing improper comments on a defendant's failure to testify, *see, e.g.*, *Griffin v. California*, 380 U.S. 609, 612-14 (1965), he has not argued that any comments regarding his failure to testify were made here.

would not warrant reversing a conviction." 470 U.S. at 12-13. That is what occurred here: defense counsel opined on the inference to be drawn from the lack of DNA evidence and the prosecutor simply responded. This was not improper vouching, much less "egregious error."

Similarly, the prosecution did not improperly imply that the defense was obligated to provide evidence. The challenged statement was immediately prefaced by a clear disclaimer: "the Defense has no obligation to put on any evidence to demonstrate anything. They don't have to throw a scintilla of evidence into this courtroom, nothing, nada." App. at 920a. As to the prosecutor's subsequent reference to the absence of a defense DNA witness, "[i]t is perfectly proper to comment on the failure of the defense to call a potentially helpful witness, at least where, as here, the comment could not be construed as a comment on the failure of the *defendant* to testify." *United States v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975) (emphasis in original) (citations omitted). The reference to the defense's subpoena power is also not, in the context of defense counsel's own comments, obviously or clearly improper. *See United States v. Panepinto*, 430 F.2d 613, 616 (3d Cir. 1970) ("In view of this [defense] summation, the prosecutor was certainly justified in pointing out that [the defendant] also had the power to subpoena witnesses . . . ."). In this context, the District Court did not commit plain error, and thus it did not err in denying Singleton's motion for a new trial.

## III. Rule 34(a)(1) Motion to Arrest Judgment

Finally, Singleton argues that the District Court erred in denying his motion under Federal Rule of Criminal Procedure 34(a)(1) to arrest the judgment based on alleged

11

defects in the indictment. Our review of the sufficiency of an indictment is plenary. *See United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000).

In support of this claim, Singleton quotes the statutes under which he was convicted, which require that the prohibited acts be committed "in furtherance of a plan or purpose" to violate the statute,[5] 18 U.S.C. § 1951(a), or "in furtherance of any such [drug or violent] crime," *id.* § 924(c)(1)(A). His brief then conclusorily asserts, without explanation or citation, that "the Indictment was lacking in said respects." For the reasons stated by the District Court, the indictment was sufficient to fulfill Singleton's right "to be informed of the nature and cause of the accusation[.]" U.S. Const. amend VI. Although the "in furtherance" language was not specifically used, "[f]ailure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication." *Hodge*, 211 F.3d at 77 (quoting *Gov't of Virgin Islands v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998)) (internal quotation marks omitted). Thus the District Court did not err in denying Singleton's motion to arrest judgment.

---

[5] Section 1951(a) broadly subjects to punishment anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce[.]" 18 U.S.C. § 1951(a). It then provides a disjunctive list of prohibited means by which such obstruction could occur: "by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section[.]" *Id.* The phrase "in furtherance of a plan or purpose" could be read to modify only "threatens physical violence to any person or property," in which case it would not be a required element of the robbery and conspiracy charges here. However, because the indictment clearly did allege that Singleton acted "in furtherance of a plan or purpose" to violate the statute, it is unnecessary for us to make that determination here.

\* \* \* \* \*

For these reasons, we affirm the District Court.