13-2102-cv
*United States v. Griffiths*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2013

No. 13-2102-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

DAVID GRIFFITHS,

*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 11-227(AKH) — Alvin K. Hellerstein, *Judge.*

————

ARGUED: APRIL 10, 2014
DECIDED: APRIL 25, 2014

————

Before: CABRANES, LYNCH and LOHIER, *Circuit Judges*.

————

Defendant-Appellant David Griffiths appeals from the May 14, 2013 judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) following Griffiths's conviction, after a jury trial, on one count of making false statements to the Government, 18 U.S.C. § 1001; one count of obstruction of justice, 18 U.S.C. § 1512(c)(2); and one count of mail fraud, 18 U.S.C. § 1341. On appeal, as below, Griffiths principally contends that he was denied his Sixth Amendment right to effective assistance of counsel when, after his attorney suffered two strokes following the close of evidence at trial, the District Court—instead of postponing trial indefinitely or granting a mistrial—appointed an attorney who had not witnessed the presentation of the evidence to deliver the defense summation. Griffiths also contends that there was insufficient evidence for a jury to convict on any of the three counts.

We hold that there is no *per se* violation of the Sixth Amendment right to be represented by one's counsel of choice and to effective assistance of counsel when a district court, after defense counsel has become incapacitated, appoints counsel, over defendant's objection, to deliver the defense summation, notwithstanding the fact that appointed counsel did not witness the presentation of the evidence. Because, in the circumstances presented, the District Court's decision to appoint substitute counsel was reasonable, and Griffiths has shown no prejudice arising from that appointment, his Sixth Amendment claim fails. We also hold that the evidence was sufficient for a jury to convict on all three counts.

Accordingly, we **AFFIRM** the judgment of the District Court.

———

DONALD D. DUBOULAY, LAW OFFICES OF DONALD D. DUBOULAY, New York, NY, *for Defendant-Appellant David Griffiths*,

JUSTIN ANDERSON, Carrie Cohen, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

———

PER CURIAM:

Defendant-Appellant David Griffiths appeals from the May 14, 2013 judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) following Griffiths's conviction, after a jury trial, on one count of making false statements to the Government, 18 U.S.C. § 1001; one count of obstruction of justice, 18 U.S.C. § 1512(c)(2); and one count of mail fraud, 18 U.S.C. § 1341. On appeal, as below, Griffiths principally contends that he was denied his Sixth Amendment right to effective assistance of counsel when, after his attorney suffered two strokes following the close of evidence at trial, the District Court—instead of postponing trial indefinitely or granting a mistrial—appointed an attorney who had not witnessed the presentation of the evidence to deliver the defense summation. Griffiths also contends that there was insufficient evidence for a jury to convict on any of the three counts.

We hold that there is no *per se* violation of the Sixth Amendment right to be represented by one's counsel of choice and to effective assistance of counsel when a district court, after defense

counsel has become incapacitated, appoints counsel, over defendant's objection, to deliver the defense summation, notwithstanding the fact that appointed counsel did not witness the presentation of the evidence. Because, in the circumstances presented, the District Court's decision to appoint substitute counsel was reasonable, and Griffiths has shown no prejudice arising from that appointment, his Sixth Amendment claim fails. We also hold that the evidence was sufficient for a jury to convict on all three counts.

Accordingly, we **AFFIRM** the judgment of the District Court.

## BACKGROUND

On April 24, 2012, the Government filed a Superseding Information charging Griffiths with three counts relating to his activities as Executive Director of the not-for-profit corporation Neighborhood Enhancement Training Services, Inc. ("NETS"): (1) making false statements, in violation of 18 U.S.C. § 1001, by submitting, in response to a grand jury subpoena, fabricated minutes of a meeting of the Board of Directors falsely reporting events that never happened; (2) obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), based on the submission of fabricated minutes; and (3) mail fraud, in violation of 18 U.S.C. § 1341, by submitting an application for funding for NETS to the Dormitory Authority of the State of New York containing false statements. Griffiths retained Jared Scharf as his defense counsel.

At trial commencing on May 1, 2012, the Government and the defense presented their respective cases, each of which included witness testimony. On May 14, 2012, after the close of evidence and after the completion of the charging conference, Griffiths's lawyer, Scharf, suffered two strokes and was hospitalized. A doctor's note submitted to the District Court revealed that Scharf would need to

undergo rehabilitation after his hospitalization, but did not predict if or when Scharf would be able to resume representation of Griffiths.

Notwithstanding the lack of evidence regarding Scharf's prognosis, Griffiths insisted that he was willing to continue trial only with Scharf as his counsel. He refused to consent to a mistrial which would have entailed a waiver of his Fifth Amendment right against double jeopardy and permitted him to be retried. On May 16, 2012, with only closing arguments remaining and the jury empaneled, the District Court adjourned trial for five days and appointed Bennett Epstein as counsel[1] to advise Griffiths solely on the issue of how to proceed in light of Scharf's condition. The District Court expressed a willingness to adjourn the trial for up to three weeks rather than "give [Griffiths] the opportunity to have the benefit of a mistrial" without waiving his right against double jeopardy. J.A. 129.

At conference on Monday May 21, 2012, Judge Hellerstein summarized his predicament, as set forth in a letter to Scharf's doctor requesting information: "[I]f Mr. Scharf's anticipated disability will be longer [than about a week] or indefinite, I may have to discharge the jury . . . and declare a mistrial. But I cannot do so unless the defendant consents or unless I find manifest necessity. So I need to know . . . how long Mr. Scharf's disability will last." J.A. 131. The defense team was unable or unwilling to provide any concrete information about Scharf's prognosis[2] and, accordingly, the

---

[1] Epstein was appointed pursuant to the Criminal Justice Act ("CJA"), which mandates that courts provide "representation for [criminal defendants] financially unable to obtain adequate representation." 18 U.S.C. § 3006A.

[2] The District Court independently contacted Scharf's physicians and rehabilitation center, but could not obtain confidential information about Scharf's condition from those sources. Scharf's paralegal could say only that Scharf would be in the rehabilitation center for at least a week, and Griffiths volunteered that "his mind is

projected length of Scharf's absence remained indefinite. Epstein stated that "the only position Mr. Griffiths wishes to take and should take at this point is he's not consenting to the granting of a mistrial." *Id.*

Rather than declare a mistrial on grounds of "manifest necessity," the District Court appointed Epstein as trial counsel, over Griffiths's objection, and instructed Epstein to prepare for summations the following Tuesday. *See id.* at 131-32. The District Court stated that, if Griffiths submitted information indicating that Scharf could return in a reasonable amount of time, it would reconsider the decision to proceed with substitute counsel. The jury was then informed of Epstein's appointment, and told that they would need to return for summations and deliberation on May 29, two weeks after the first adjournment. *Id.* at 132-33. The District Court noted the possibility of "redo[ing] some testimony" in advance of summations. *Id.* at 135.

At a May 24, 2012 status conference, Epstein represented: "I'm ready and I believe that I can deliver an effective summation in the case. . . . My issue is this. . . . I don't know if, by definition, I can render effective assistance of counsel based upon the fact that I never saw a single witness testify." J.A. 136. He classified the issue as a "structural one." *Id.* Judge Hellerstein responded, "I felt, in appointing you . . . that you would be able to effectively[ ]represent Mr. Griffiths. . . . I can't think of a particular demeanor issue that

much improved" but that he had a "speech problem." It is unclear whether the defense team was unwilling or unable to provide more information to the District Court. *See* J.A. 130 (PROSECUTION: "I am concerned that the defense team is not providing us with the information we need in order for the Court to determine whether to declare a mistrial. They have the ability to get that information, your Honor. We don't." THE COURT: "Mr. Epstein, what do you know?" MR. EPSTEIN [(CJA counsel)]: "I don't think it is proper for me to reveal at this point what the subject of those discussions was.").

will control how one looks at the testimony that was presented." *Id.* Griffiths then renewed his motion "to continue the trial until Mr. Scharf becomes able to conduct his duties as defense counsel," which the District Court denied.[3] *Id.* at 138.

On May 29, 2012, the parties gave summations and the jury began deliberations. On May 30, the jury delivered a verdict of guilty on all three counts. Griffiths made post-trial motions for a new trial or judgment of acquittal, Fed. R. Crim. P. 29, 33, which the District Court denied. The District Court sentenced Griffiths principally to five months' imprisonment on each count, to be served concurrently, and two years' supervised release. Judgment was entered on May 14, 2013, and this timely appeal followed.

## DISCUSSION

On appeal, Griffiths argues that the District Court erred in denying his post-trial motions because (1) the appointment of Epstein to deliver the summation, over Griffiths's objection, violated his Sixth Amendment rights; and (2) there was insufficient evidence for the jury to convict on any count.

### A. Griffiths's Sixth Amendment Rights

The Sixth Amendment guarantees a right to effective assistance of counsel as part of the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). It also guarantees, with some limitations, a right to counsel of one's choosing. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006). Griffiths argues that his Sixth Amendment rights were

---

[3] Prior to renewing his motion, Griffiths reported that Scharf was improved but still "slurring his speech" and could not stay awake for more than twenty minutes at a time. J.A. 137.

violated by (1) the denial of his right to be represented by counsel of his choice, and (2) the appointment of counsel to deliver a closing argument "without having seen a minute of trial."[4] Appellant's Br. 32-33.

It is well established that "although [a trial court] may not compel [a] defendant to proceed with incompetent counsel[,]" it may, in certain circumstances, "require a defendant to proceed to trial with counsel not of defendant's choosing." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997); *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). Moreover, a district court has "a great deal of latitude in scheduling trials," *Morris v. Slappy*, 461 U.S. 1, 11 (1983), and need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay, *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008) (noting that this decision is reviewed for "abuse of discretion"). *See generally Sims v.*

---

[4] Although we do not ordinarily decide "ineffective assistance" claims on direct appeal, under the circumstances presented here—a well-developed record on appeal resulting from the fact that the ineffective assistance issue was fully developed at trial—postponing a decision until defendant can bring a habeas petition pursuant to 28 U.S.C. § 2255 would not serve the interests of justice. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003) ("[I[n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance [because] [w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."); *see also United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (noting that we have "entertained ineffective assistance claims for the first time on direct appeal when their resolution is beyond any doubt or to do so would be in the interest of justice") (internal quotation marks omitted).

*Blot (In re Sims)*, 534 F.3d 117, 132 (2d Cir. 2008) (describing abuse of discretion standard). We conclude that in the circumstances presented here, the efforts of the District Court to accommodate Griffiths's desire to be represented by Scharf were more than adequate, and it was not an abuse of discretion to conclude that "the needs of fairness" and "demands of its calendar" permitted appointment of substitute counsel. *See Gonzalez-Lopez*, 548 U.S. at 152 (recognizing that those considerations may trump the right to one's counsel of choice).

Griffiths's attempt to show that Epstein was constitutionally ineffective also fails. Ordinarily, to prevail on a claim for ineffective assistance of counsel a defendant must demonstrate that: (1) counsel's performance fell below an "objective standard of reasonableness"; and (2) defendant was "prejudice[d]," meaning that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 693-94. We have also recognized two discrete situations constituting "*per se* ineffective assistance," such that a defendant "need not make a particularized showing of prejudice to obtain relief": when "unknown to the defendant, counsel was, at the time of representation, (1) not duly licensed to practice law . . . or (2) implicated in the defendant's crimes." *United States v. Rondon*, 204 F.3d 376, 379-80 (2d Cir. 2000) (internal quotation marks and citation omitted).

Griffiths points to no particularized prejudice suffered as a result of Epstein's appointment as counsel to deliver the summation, and the record reveals no basis for finding such prejudice.[5] Instead,

---

[5] Griffiths did not argue below, and does not argue on appeal, that Epstein was unprepared or point to specific flaws in Epstein's summation that might have altered the outcome.

Griffiths urges us to create a new category of *per se* ineffective assistance—where counsel delivers a summation without having witnessed the presentation of the evidence. There is no basis in law or logic for creating such a rule, as the facts of this case reveal. The fact that Griffiths's replacement counsel—who was undisputedly competent and prepared—did not witness the presentation of evidence is not tantamount to having "no counsel at all," nor does it present a "conflict of interest" that would prevent zealous representation, such that his representation could be deemed *per se* deficient.[6] *See Rondon*, 204 F.3d at 381 (discussing rationales for *per se* ineffective assistance categories). Accordingly, absent any showing of prejudice, Griffiths's claim that he was deprived of his right to counsel fails.

In reaching these conclusions, we do not minimize the difficulty of the choice faced by the District Court, and the less-than-ideal situation facing Griffiths. Griffiths asserted two valuable and constitutionally-protected rights: the right to counsel of one's choosing, *Gonzalez-Lopez*, 548 U.S. at 147-48, and the right to proceed to verdict at a single trial before the jury originally empaneled to hear his case, *see United States v. Razmilovic*, 507 F.3d 130, 136 (2d Cir. 2007) (citing *Arizona v. Washington*, 434 U.S. 497, 503 (1978)). He urged the District Court to ensure both of these rights by continuing the trial until Scharf recovered sufficiently to resume his duties and complete the trial.

---

[6] The contrast between this case, where Epstein prepared for a week and then delivered a thorough closing argument, and the case relied upon by Griffiths, *Herring v. New York*, 422 U.S. 853, 863 (1975), in which the Supreme Court held that "a trial judge [cannot] deny absolutely the opportunity for any closing summation" in criminal trials, merely highlights why the circumstances presented here do not form the basis for an ineffective assistance claim, much less a finding of *per se* ineffective assistance of counsel.

Had the District Court immediately pressed ahead with trial following Scharf's strokes, without regard for Griffiths's constitutional rights, his argument might well have force. Instead, the District Court made appropriate efforts to accommodate Griffiths's preference. It adjourned the trial, appointed counsel for the limited purpose of advising Griffiths of his rights and options under the circumstances, and sought to determine whether and when Scharf was likely to be able to return to court and effectively represent Griffiths.

Although the District Court had indicated its willingness to adjourn the trial for as long as three weeks to await Scharf's return to health, after two weeks the court remained unable to secure *any* indication of when, *if ever*, Scharf would be able to return. Under these circumstances, Griffiths's position amounted to a demand for an indefinite adjournment—an impossibility in this, and perhaps any, case. No jury can be held on indefinite call. Moreover, under the circumstances here, the judge had no guarantee that Scharf would ever be sufficiently recovered to resume trial. Urgent action was necessary.

Since Griffiths's demand for an indefinite adjournment was appropriately rejected, the courses of action open to the District Court permitted the preservation of one or the other, but not both, of the constitutional interests he asserted. A mistrial would, at least potentially, preserve his right of counsel of choice, either by permitting a new trial once Scharf had recovered, or by giving Griffiths time to retain alternate counsel if Scharf was unable to proceed within a reasonable time, but at the cost of subjecting Griffiths to a new trial; the appointment of substitute counsel would preserve Griffiths's right to a single trial before a single jury, but at the cost of proceeding with appointed counsel rather than with his retained counsel, Scharf.

Under these unusual circumstances, the District Court properly exercised its discretion in deciding to appoint substitute counsel, given Griffiths's refusal to consent to a feasible alternative.[7] The right to counsel of choice, which after all often gives ground to the simple demands of judicial scheduling, is not automatically to be preferred over the right to a single trial before a single jury.

At the same time, we note that the right to *effective* assistance of counsel is paramount. A second trial before a different jury, despite the inconvenience, cost and disruption, is preferable to an unfair trial. A district court must carefully consider the extent to which substituted counsel can effectively continue the trial on defendant's behalf. Here, as discussed above, we are confident that the district court weighed the ability of substitute counsel to deliver an effective summation on the defendant's behalf, and our review reveals neither a departure from highly competent advocacy nor any prejudice to the defendant's rights. Accordingly, we find no reason to overturn the judgment of the District Court.[8]

---

[7] The District Court properly indicated that it would defer to any *feasible* preference expressed by Griffiths, whether a request for a mistrial, or proceeding with his counsel of choice within a known, reasonable time period. But Griffiths's insistence on an impracticable course of action necessitated the District Court's exercise of discretion in choosing between two undesirable alternatives.

[8] In affirming the decision of the District Court, we do not hold that Judge Hellerstein lacked the discretion to grant a mistrial if, he concluded that the appointment of substitute counsel posed a genuine threat to Griffiths's Sixth Amendment rights. In weighing alternative courses that implicate different constitutional rights, a district court necessarily exercises discretion in determining which course will encroach the least upon a defendant's rights, for it often cannot know the answer in advance. *Cf United States v. MacQueen*, 596 F.2d 76, 82 (1979) ("Per se rules are inappropriate in the mistrial context, and every case turns on its own facts.") (internal quotation marks omitted). We are not in a position to second-guess such decisions, which are necessarily based on a nuanced understanding of the facts. *See Razmilovic*, 507 F.3d at 133 (a district court's declaration of a mistrial on grounds of manifest necessity is reviewed for abuse of discretion).

**B. Sufficiency of the Evidence**

Griffiths contests his conviction on Counts One and Two on the basis that there was insufficient evidence that the minutes of relevant meetings of the Board of Directors of NETS contained material falsehoods. On Count Three, Griffiths argues that there was insufficient evidence that he had the requisite fraudulent intent in completing the Dormitory Authority questionnaire containing falsehoods.

We review *de novo* a challenge to sufficiency of the evidence, viewing the evidence in the light most favorable to the Government, and affirming if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), other quotations omitted); *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003) (citations omitted).

With respect to Counts One and Two, we conclude that the evidence that Griffiths fabricated minutes of NETS meetings to falsely reflect, among other things, approval of transfers of money from NETS to himself—transfers which were, in fact, never approved—was sufficient for a jury to find that the falsehoods in the minutes were material. *See United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006) ("A false statement is material if it . . . is capable of influencing the decision-making body to which it was addressed" including by "distracting government investigators' attention away" from the target of the investigation).

With respect to Count Three, which was based on the false statements in the Dormitory Authority questionnaire, we conclude that there was sufficient circumstantial evidence that "defendant made misrepresentations to the victim(s) with knowledge that the

statements were false," as required to show fraudulent intent. *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

We therefore conclude that there was sufficient evidence to convict Griffiths on all three counts.

## CONCLUSION

To summarize:

(1)　　　Griffiths's claim that his Sixth Amendment rights were violated fail.

　　　a. The Sixth Amendment does not create an absolute right for a defendant to be represented by counsel of his choice; where his chosen counsel becomes incapacitated for an indefinite period a district court has discretion to appoint substitute counsel, where doing so would not unduly prejudice the defendant.

　　　b. A district court's appointment of counsel to deliver the defense summation where counsel did not witness the presentation of the evidence is not a *per se* violation of the Sixth Amendment right to effective assistance of counsel.

　　　c. Griffiths has not shown that he was prejudiced by the District Court's appointment of substitute counsel to deliver the summation in his defense.

(2)　　　There was sufficient evidence for a jury to convict Griffiths on all three counts.

Accordingly, we **AFFIRM** the judgment of the District Court.