15-1893(L)
*United States v. Robins*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of December, two thousand sixteen.

PRESENT:  DENNY CHIN,
          SUSAN L. CARNEY,
                    *Circuit Judges,*
          RICHARD M. BERMAN,
                    *District Judge.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                    *Appellee,*

          v.                                              15-1893(L)
                                                          15-2530 (Con)

JERRY ROBINS, AKA Jerry Robbins, DBA Finish Line
Auto Sales, AKA Finish Line Auto,

                    *Defendant-Appellant.*\*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

\*        Judge Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

\*\*        The Clerk of Court is respectfully instructed to amend the caption as set forth above.

FOR APPELLEE:                      MONICA J. RICHARDS, Assistant United
                                   States Attorney, *for* William J. Hochul, Jr.,
                                   United States Attorney for the Western District
                                   of New York, Buffalo, New York.

FOR DEFENDANT-APPELLANT:           BRUCE R. BRYAN, Syracuse, New York.

Appeal from the United States District Court for the Western District of New York (McAvoy, *J.*[1]).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART**, and the case is **REMANDED**.

Defendant-appellant Jerry Robins appeals a June 2, 2015 judgment of the district court, convicting him, after a jury trial, of three counts of money laundering, three counts of willfully violating a transaction-reporting law, and one count of doing so while violating another law of the United States.  The district court sentenced Robins principally to 63 months' imprisonment and entered a final order of forfeiture of $70,275 and specified real property.  On appeal, Robins argues: (1) the evidence was insufficient to sustain his convictions; (2) the jury was erroneously instructed; and (3) he was denied his Sixth Amendment right to counsel.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

---

[1]      Judge Thomas J. McAvoy, United States District Judge for the Northern District of New York, sitting by designation in the Western District of New York.

**1.      Sufficiency of the Evidence**

Robins contends that the evidence was insufficient to convict him of

money laundering and transaction-reporting violations.

In an appeal challenging the sufficiency of the evidence, we review the

evidence in "the light most favorable to the government and credit every inference that

the jury might have drawn in the government's favor." *United States v. Salameh*, 152 F.3d

88, 151 (2d Cir. 1998) (per curiam).  "A verdict of guilty may be based entirely on

circumstantial evidence as long as the inferences of culpability drawn from the

circumstances are reasonable." *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir.

2005).  "Nonetheless, a conviction based on speculation and surmise alone cannot

stand." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) (citations omitted).

**a.      Money Laundering**

To convict a defendant of money laundering, the government must prove:

(1) that the defendant conducted a financial transaction; (2)
that the transaction in fact involved the proceeds of specified
unlawful activity . . .; (3) that the defendant knew that the
property involved in the financial transaction represented
the proceeds of some form of unlawful activity; and (4) that
the defendant knew [the] transaction was designed in whole
or in part [either] to conceal or disguise the source . . . of
those proceeds [or to avoid transaction-reporting
requirements].

*United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir. 1997); *see* 18 U.S.C.

§ 1956(a)(1)(B)(ii).  Robins argues that the evidence was insufficient to prove that certain

customers used drug conspiracy proceeds to purchase cars from his dealership in Buffalo, New York ("Finish Line"), or that he knew such money was the proceeds of unlawful activity. We conclude that the evidence was sufficient to convict on Counts 3 and 8 of the indictment, but not on Count 7. We discuss each count, in turn.

Count 3 concerned a February 27, 2006 sale of a 2001 GMC Yukon to Robert DeWitt Stevenson for $25,000 in cash. Robins argues that evidence that he knew Stevenson paid with proceeds of illegal activity was lacking. The argument fails. Stevenson testified that the money came from his drug distribution business. Although Stevenson also testified that he never spoke to Robins about drugs, the government presented evidence that Robins (1) failed to report the all cash sale to the Financial Crime Enforcement Network ("FinCEN"), *see* 31 U.S.C. § 5331(a) (requiring such reporting), (2) registered the vehicle to Stevenson's stepfather, and (3) placed a lien on the Yukon despite receiving full payment. A reasonable jury could have concluded from this evidence that Robins knew that the money came from illegal sources and sought to conceal its origin. Accordingly, the evidence was sufficient to convict Robins of money laundering on Count 3.

Count 8 concerned a June 9, 2007 sale of a 2004 Infiniti to Henry Lloyd and Tyrone Pennick for $34,455. Robins again argues that evidence that he knew they paid with proceeds of illegal activity was lacking. Lloyd testified, however, that Lloyd and Pennick purchased the vehicle with proceeds of their cocaine wholesaling business,

Lloyd had told Robins that he sold drugs, and Pennick told him that they "got to go get cashier checks and money orders because [Robins] wouldn't take [$35,000] cash." App. at 401. When asked if he knew why Robins would not take the cash, Lloyd testified: "Because it was over 10,000, I guess" -- the amount that triggers federal reporting requirements. App. at 402. The jury reasonably could have drawn this same inference. Accordingly, the evidence was sufficient to convict Robins of money laundering on Count 8.

Count 7 concerned an April 27, 2007 purchase of a 2002 Chevrolet Suburban by Jerome Davis for $10,820. Robins contends that the evidence was insufficient to prove that those funds were "*in fact . . .* the proceeds of" a drug distribution conspiracy. 18 U.S.C. § 1956(a)(1) (emphasis added); 18 U.S.C. § 1956(c)(7)(A); § 1961(1); 21 U.S.C. § 841. Drawing all reasonable inferences in favor of the government, the evidence established that: (1) Davis pled guilty to possession of four grams of a controlled substance in 2004 and served a year and a half in jail; (2) in 2007, Davis accompanied Robins to an auction where Robins bid on the Suburban and Davis paid Robins for it in cash; (3) the Suburban was registered to Davis's fiancé, Tameca Love; (4) dealership receipts listed inconsistent prices for the Suburban, one greater than $10,000 and the other less; (5) Robins did not report the transaction to FinCEN; and (6) Davis and Love testified that they did not deal drugs and paid with legitimate money.

- 5 -

In denying Robins's motion for judgment of acquittal, the district court reasoned that one could infer that drug proceeds were involved because Davis was "connected to drugs" and other circumstances suggested an effort to avoid reporting. S. App. at 10. We disagree that a rational jury could infer on this evidence that the 2002 Suburban was purchased in 2007 with drug proceeds.

Davis' testimony that, in 2004, he pled guilty to *possession* of four grams of a controlled substance is the only evidence that he was "connected to drugs." *Id.* at 10. The record is devoid of evidence of other salient facts, even which substance he was convicted of possessing. Our cases are clear that a person's mere possession of a small quantity of drugs, without more, does not support an inference that the person is dealing drugs. *See, e.g.*, *United States v. Boissoneault*, 926 F.2d 230, 234 (2d Cir. 1991) (evidence insufficient to sustain conviction for possession with intent to distribute where "the quantity of cocaine at issue, 5.31 grams (.19 oz.), was not inconsistent with personal use" and defendant possessed no other instrumentalities of the drug trade); *United States v. Wallace*, 532 F.3d 126, 129 (2d Cir. 2008) ("[A] defendant who holds narcotics solely for personal use is in possession; one who delivers or transfers narcotics to another -- for consideration or gratis -- is distributing."). The same logic applies here. No rational juror could infer that Davis dealt drugs in 2007 solely because he was convicted of possessing four grams of an unspecified controlled substance in 2004.

Nor, in the absence of evidence tying the $10,820 to narcotics activity, could a rational juror have found that Davis purchased the Suburban with proceeds of such activity. *Cf. D'Amato*, 39 F.3d at 1256 ("[T]he government must do more than introduce evidence at least as consistent with innocence as with guilt."); *United States v. Martinez*, 54 F.3d 1040, 1045 (2d Cir. 1995) (Calabresi, *J.*, concurring) ("[T]he aggregation of many small pieces of data . . . every one [of which] is in equipoise . . . can never establish proof beyond a reasonable doubt [because] [t]he adding of zeros to zeros, no matter how many, cannot amount to more than zero."). Accordingly, the judgment of conviction on Count 7 is reversed.

### b. Transaction Reporting

Section 5331 of Title 31 of the United States Code required Robins to file a report with FinCEN whenever "in the course of [his] . . . business, [he] receive[d] more than $10,000 in coin or currency in 1 transaction (or 2 or more related transactions)." 31 U.S.C. § 5331.[2] A willful failure to do so is a crime. 31 U.S.C. § 5322. "To establish that a defendant 'willfully violated' [a transaction-reporting requirement], the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994). Therefore, to convict Robins under § 5322(a) here, the government had to prove beyond a reasonable doubt that (1) in the

---

[2] Currency is defined to include "any monetary instrument (whether or not in bearer form) with a face amount of not more than $10,000," including money orders and cashier's checks. 31 U.S.C. § 5331(d)(1)(B).

course of his business (2) he knowingly received "more than $10,000 in cash or currency in 1 transaction (or 2 or more related transactions)" and (3) he failed to report such transaction to FinCEN (4) with knowledge that it was unlawful to do so. *See* 31 U.S.C. § 5322(a); *id.* § 5331; *Ratzlaf*, 510 U.S. at 136-37. To convict Robins under § 5322(b) the government must have proven further that Robins willfully violated § 5331 either while violating another federal law or as part of a pattern of illegal activity involving more than $100,000. 31 U.S.C. § 5322(b).

Robins was convicted on Counts 17, 19, and 25 for willfully failing to file reports with FinCEN in connection with certain vehicle sales. He was convicted on Count 24 for willfully failing to file such a report while laundering drug conspiracy proceeds. Robins concedes that he did not file reports with FinCEN for any of the transactions underlying these charges. Instead, he contends that evidence was insufficient to prove that the transactions triggered § 5331 reporting requirements and that he knew that he was required to file such reports.

First, Robins's argument that he had no obligation to report the relevant transactions is unavailing. As to Count 17, Stevenson testified that he purchased the Yukon for $25,000 in cash, which plainly triggers § 5331. As to Count 19, although Robins avers that no report was required because he received an exempt $12,000

cashier's check,[3] a trade in of a 2000 Cadillac worth $7,000, and other money in exchange for a $23,000 Mercedes, the jury could have inferred from Finish Line's inventory log that the "trade in" of the Cadillac concealed a $11,000 cash payment. As to Count 24, even accepting Robins's argument that some of the tender for the Infiniti was exempt from reporting, Lloyd testified to paying at least $16,000 in non-exempt currency which Robins was required to report to FinCEN. Finally, as to Count 25, concerning a sale of a 2006 Range Rover for $48,937.50, even accepting that Robins received an exempt $30,000 cashier's check, the sale agreement and dealership inventory log permitted the jury to infer that Robins received at least $18,000 in non-exempt currency for the car, triggering § 5331 reporting. Accordingly, we conclude that the evidence was sufficient for the jury to find that each transaction should have been reported to FinCEN.

Second, Robins's contention that there was no evidence that he knew of his obligation to file reports with FinCEN is plainly contradicted by the record. His wife, LaToya Gibson-Robins, testified that, as early as 2005, she and Robins learned from another car dealer that federal law required Finish Line to report to FinCEN when it received more than $10,000 in cash or currency in connection with a vehicle sale.

---

[3]    A cashier's check for an amount greater than $10,000 is exempt from reporting. *See* 31 U.S.C. § 5331(d)(1)(B) (defining "currency" to include "any monetary instrument . . . with a face amount of not more than $10,000"); 31 C.F.R. § 1010.330(c)(1)(ii) (clarifying that under § 5331(d)(1)(b) "currency means . . . [a] cashier's check (by whatever name called, including 'treasurer's check' and 'bank check'), bank draft, traveler's check, or money order having a face amount of not more than $10,000").

Therefore, there was evidence that Robins knew that failing to file such reports was unlawful when he sold the relevant vehicles in 2006 and 2007.

Accordingly, we conclude that there was sufficient evidence to convict Robins on Counts 17, 19, and 25 under 31 U.S.C. § 5322(a) and on Count 24 under 31 U.S.C. § 5322(b).

**2.     Jury Instructions**

Robins contends that the district court erred in instructing the jury on the *mens rea* elements of the money laundering and transaction reporting statutes.

Where a defendant has timely objected, as Robins did below to the money laundering charges, we review "the district court's jury charge *de novo* and will vacate a conviction for an erroneous charge unless the error was harmless." *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013). By contrast, where "a defendant fails to make a timely objection" -- as Robins failed here to object to the transaction reporting charges -- "we review the instruction for plain error." *Id.* "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury of the law." *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016).

We have reviewed the challenged portions of the jury instructions, the verdict sheet, and the district court's response to the jury's inquiry about the same and conclude they are without error. The district court adequately informed the jury of the

law on the money laundering and transaction-reporting offenses and correctly stated the relevant legal standards.

Robins also argues that the district court constructively amended the indictment in violation of the Fifth Amendment by instructing the jury on both 31 U.S.C. § 5322(a) and 31 U.S.C. § 5322(b) when the indictment charged only the latter.

"A constructive amendment [of the indictment] occurs" when the evidence presented at trial and "the district court's jury instructions combine to 'modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than one charged by the grand jury.'" *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996) (quoting *United States v. Clemente*, 22 F.3d 477, 482 (2d Cir. 1994)). Such amendments "are *per se* violations of the fifth amendment that require reversal even without a showing of prejudice to the defendant." *Id.*

Under Federal Rule of Criminal Procedure 31(c)(1), however, a "defendant may be found guilty of . . . an offense necessarily included in the offense charged." "We have made clear that an 'indictment need not charge the defendant with the lesser [included] offense in order for the trial court to submit that offense to the jury.'" *United States v. Taylor*, 816 F.3d 12, 18 (2d Cir. 2016 (quoting *United States v. Dhinsa*, 243 F.3d 635, 674 (2d Cir. 2001)). To determine if one offense is a lesser included of another under Rule 31(c)(1), we ask whether "the elements of the lesser offense are a subset of

the elements of the charged offense." *Schmuck v. United States*, 489 U.S. 705, 716-17 (1989).

Here, the elements of a 31 U.S.C. § 5322(a) offense plainly are a subset of the elements of a 31 U.S.C. § 5322(b) offense. *Compare* § 5322(b) (providing criminal liability for (1) "willfully violating [31 U.S.C. § 5311 *et seq.*] or a regulation" issued thereunder (2) "while violating another law of the United States or as part of a pattern of illegal activity involving more than $100,000" in a year) *with* § 5322(a) (providing lesser criminal liability for "willfully violating [31 U.S.C. § 5311 *et seq.*] or a regulation" issued thereunder). Therefore, because the indictment charged a § 5322(b) offense, the district court did not constructively amend the indictment by instructing the jury on § 5322(a), a lesser included offense. *See Taylor*, 816 F.3d at 18.

## 3. Sixth Amendment Right to Counsel

Robins argues that he was deprived of his Sixth Amendment right to counsel of his choice when the district court denied his trial counsel's motion to withdraw from representation, filed five days before trial was scheduled to begin, and refused to grant a lengthy continuance for counsel to prepare for trial. He also claims that his trial counsel was constitutionally ineffective for failing to make various legal arguments, raise objections, or cross-examine witnesses, and for other reasons.

We review the district court's denial of the withdrawal motion and request for a continuance for abuse of discretion. *United States v. Griffiths*, 750 F.3d 237,

242 (2d Cir. 2014). "While a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right. Absent a conflict of interest, a defendant in a criminal case does not have the unfettered right to retain new counsel." *United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008) (ellipsis omitted). Still, "where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted). "[A]lthough a trial court may not compel a defendant to proceed with incompetent counsel, it may, in certain circumstances, require a defendant to proceed to trial with counsel not of defendant's choosing." *Griffiths*, 750 F.3d at 241 (internal quotation marks and alterations omitted). "In determining whether to allow a defendant to retain new counsel, the court must consider the risks and problems associated with the delay, and whether substitutions would disrupt the proceedings and the administration of justice." *Brumer*, 528 F.3d at 160. Furthermore, because a district court has "a great deal of latitude in scheduling trials [it] need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay." *Griffiths*, 750 F.3d at 242.

The district court denied the motion to withdraw after a lengthy conference with Robins and his trial counsel wherein, after hearing from Robins, the district court noted its belief that he had manufactured a conflict with his attorneys to

delay the trial. The district court further discussed with Robins and trial counsel the payment and communications issues that allegedly had arisen between them. Counsel stated that he was not demanding full payment before trial and Robins stated that he would respond to counsel's inquiries in a timely fashion. Robins and counsel stated they were prepared to try the case together. The district court therefore denied counsel's motion and granted a short continuance, noting its own scheduling constraints and the fact that the trial had been scheduled 45 days earlier. We conclude that the district court did not abuse its discretion. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) ("We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." (citations omitted)).

We decline to review Robins's claim of ineffective assistance of counsel on the record now before us, but note that Robins may bring this claim in a motion pursuant to 28 U.S.C. § 2255. *See United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) (noting "our 'baseline aversion to resolving ineffectiveness claims on direct review' and the Supreme Court's . . . statement that 'in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance'" (citations omitted)).

We have reviewed Robins's remaining arguments and conclude they are without merit. Accordingly, the district court's judgment of conviction on Counts 3, 8,

17, 19, 24, and 25 is **AFFIRMED**, its judgment of conviction on Count 7 is **REVERSED**, and the case is **REMANDED** for resentencing and for reconsideration of the forfeiture amount in light of the remaining counts of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk